WATER CO. OF TONOPAH v. PUBLIC SERVICE COMMISSION OF NEVADA et al.

(District Court, D. Nevada. August 19, 1913.)

No. A–16.

1. INJUNCTION ⚫=146—TEMPORARY INJUNCTION—SWORN ANSWER.
    Where an answer under oath, denying the equities of a bill, is filed, a temporary injunction cannot be granted on the bill, for the sworn answer is evidence on behalf of the defendant, and rebuts the allegations contained in the bill.

2. PUBLIC SERVICE COMMISSIONS ⚫=7—UTILITIES—COMPENSATION.
    An investment in a public utility, like the property of a railroad company, or a water or gas company, should under normal conditions receive a fair and reasonable rate, based upon the fair and reasonable valuation of the property or capital invested.

3. INJUNCTION ⚫=137(4)—TEMPORARY INJUNCTION—ISSUANCE.
    The operation of an order of a governing body charged with the duty of fixing water rates for municipal corporations should not be suspended by the issuance of a temporary injunction, unless complainant furnishes substantial evidence that the rate fixed is confiscatory.

In Equity. Bill by the Water Company of Tonopah against the Public Service Commission of Nevada and H. F. Bartine and others, as members thereof. On application for temporary injunction. Restraining order discharged and application denied.

On an investigation conducted by the Public Service Commission on it own motion, though induced by a complaint filed by the grand jury of Nye county, the Commission entered an order providing for a very substantial reduction in the rates charged for water by the Tonopah Water Company. It appeared that the water used for supplying the town of Tonopah was percolating water, gathered into wells located on land belonging to the water company.

Haven & Athearn, of San Francisco, Cal., and H. R. Cooke, of Tonopah, Nev., for plaintiff.

Geo. B. Thatcher, Atty. Gen., and H. F. Bartine and J. A. Sanders, Dist. Atty., both of Carson City, Nev., for defendants.

MORROW, Circuit Judge. [1] I do not think the evidence is sufficient to justify the court in granting the temporary injunction. It is by no means clear that the water rates prescribed by the Commission in this case will be confiscatory. On the contrary, the charge made in the bill that such would be the case seems to me to be fully rebutted by the answer and its supporting affidavits. The well-established rule is that on such an application for a temporary injunction, if an answer under oath has been filed denying the equities of the bill, the temporary injunction will not issue, for the reason that the sworn answer is evidence on behalf of the defendant, and rebuts the allegations of the bill, and such allegations are therefore left at least doubtful.

[2] That is the situation here. The evidence on behalf of the complainant is not sufficient to overcome the evidence that has been sub-

mitted on behalf of the defendants. In the first place, it is not clear what effect the rates prescribed by the Public Service Commission will have. They may not materially reduce the complainant's aggregate income. Tonopah appears to be a prosperous community, with the prospect that a prosperous future lies before it. It is stated in the bill that the value of the waterworks, exclusive of the value of the alleged water right, is $349,000, and it is claimed that the water right is worth $500,000, making approximately $849,000 as the value of the entire property. It is alleged that the Public Service Commission, in fixing rates upon this valuation of the complainant's property, has made no allowance for the water right in arriving at the valuation of the property as a whole; that is to say: That it disallows the claim of $500,000 as the valuation of the water right in fixing the valuation for the entire property. It is also alleged that there is no allowance for depreciation of the plant, and no allowance made for taxes. In the answer the Commission alleges that it does allow for taxes and for depreciation, and that even allowing the complainant the valuation of $500,000 for the alleged water right, it would still receive a net return exceeding 6 per cent. per annum upon its actual investment. This hardly amounts to confiscation, even under the high rate of interest prevailing in Nevada.

But has the complainant a water right upon which it can fix a valuation of $500,000? I very much doubt it. The water which it claims as a water right is percolating water running through its lands. I do not understand that percolating water passing under or through the soil is anywhere recognized as a water right having a valuation separate and distinct from the land. It is not in any sense surface water. It is not water appropriated from running streams; nor is it water the right to which is the same as that of a riparian owner. Percolating water is part and parcel of the soil, and it is as much a constituent element of the land as the mineral therein contained. Its value, if it has any, is therefore in the land, and cannot be separated from the land. It follows that in this case the value which the water has must be in the land. It may be that the complainant's development of water upon this land has given it a largely increased value; but, if that is so, it appears to me that that should be the valuation of the land with its water content as a whole, and not as land with a water right attached. This may not make a great difference in the result; but it will enable the Commission and the court to make a comparison with other land of like character and similarly situated.

In any event, it is my opinion that the evidence now before the court is not sufficient to warrant the court in adding $500,000 to the value of the complainant's land, and upon such a valuation hold that the water rate fixed by the Commission is confiscatory. Of course, there can be no question but that an investment in public utilities, like the property of a railroad company, a water company, or a gas company, should, under normal conditions, receive a fair and reasonable return, based upon the fair and reasonable valuation of the property or the capital invested. In the West, the development of water, like the development of gold, silver, or copper, may add enormously to the

value of the land, and in such a case the owner of the land is entitled to add such increased valuation to the value of the land when offered for sale or when appropriated for public use. But in this case we have not reached the point where this valuation has been established.

The inquiry we are now making is near the surface. We are not required to go into the question whether the Commission had the proper evidence before it in making its valuation. What the court holds is that the evidence now before this court is not sufficient to warrant the court in holding that the increased valuation claimed by the complainant should have been made by the Commission. We are of the opinion that such increased valuation has not been established by the evidence now before the court. In other words, the court is not prepared at this time to say that, considering all the material facts that have been brought to the attention of the court, the water rates fixed by the Commission are not fair and reasonable.

[3] The Supreme Court of the United States, in the Knoxville Water Rate Case, stated a rule which appears to be applicable here. It is that the order of a governing body, charged with the duty of fixing water rates for municipal corporations, should not be suspended in its operation by a federal court before the order goes into effect, unless the rate is clearly confiscatory, and unless the complainant furnishes substantial evidence to that effect, and the practical application of the order be first ascertained. Knoxville v. Water Co., 212 U. S. 1, 18, 29 Sup. Ct. 148, 53 L. Ed. 371. If, under the actual operation of the order, the income derived from the rates thus fixed amounts to a confiscation of the complainant's property, there will be nothing in the present proceeding to prevent the court from issuing an injunction to restrain the enforcement of the order. Nothing that the court has said is therefore intended in any sense to be construed as determining the final question of the valuation of these water rights in the land until all the evidence is before the court and considered. The facts which are now before me are in no such shape as to enable me to determine that question at this time.

The facts before me are insufficient to warrant my granting the temporary injunction asked for. The restraining order will therefore be discharged, and the temporary injunction denied; but, as I have before stated, this does not finally settle the decree in the case. The facts supporting a final decree will have to be found by a trial of the issues involved. I am simply deciding the question now as to whether or not the present restraining order should be discharged, and the application for a temporary injunction denied. One of the principal questions to be yet decided is whether or not a water right can be attached to percolating water, which is a part and parcel of the land. Is it to be deemed the same as an independent water right arising out of appropriation or riparian ownership? It seems to me that it would be difficult to establish an absolutely independent water value aside from the value of the land; but the value of the water with the land may be ascertained in the view of its available uses.

I have no reason to doubt that the Public Service Commission, in dealing with this matter, has been actuated by a spirit of fairness, and

a desire to do what is right. My previous experience with the work of this Commission has impressed me with the idea that it is desirous of performing its duties in a spirit of fairness to all. Under the circumstances, and in view of the evidence before the court, I do not feel justified in holding, for the purpose of this motion, that the order of the Commission complained of is invalid.

The clerk will enter an order, in conformity with these views, that the restraining order will be discharged, and the application for a temporary injunction denied.